Mark A. Chavez
E-Mail: mark@chavezgertler.com
Chavez & Gertler LLP
42 Miller Ave.
Mill Valley, California 94941
Telephone: (415) 381-5599
Facsimile: (415) 381-5572

Bryan L. Clobes*
E-Mail: bclobes@caffertyclobes.com
**CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP**
1101 Market St., Suite 2650
Philadelphia, Pennsylvania 19107
Telephone: (215) 864-2800
Facsimile: (215) 864-2810

Anthony F. Fata*
Christopher P.T. Tourek*
E-Mail: afata@caffertyclobes.com
        ctourek@caffertyclobes.com
**CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP**
150 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 782-4880
Facsimile: (312) 782-4485

*Pro Hac Vice Applications to be submitted

Attorneys for Plaintiffs and the Putative Classes

[LIST OF ADDITIONAL COUNSEL ON BELOW CAPTION]

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN BILIC, SEAN GRIFFIN, FRANK HENDERSON, JAMES MARTILLARO, JONATHAN MEYERS, TIMOTHY ROBERTS, ELLIOT ROSEN, GEOFFREY SCHLOTTMAN, and DONNA VLASSICH on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>        v.<br><br>APPLE, INC.,<br><br>                Defendant. | Case No.: 5:18-cv-00449<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*;<br>2. Violations of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200;<br>3. The Song-Beverly Act – Breach of Implied Warranty Violations, Cal. Civ. Code §§ 1792, 1791.1, *et seq.*; |

4. Violation of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903 *et seq.*
5. Violations of New York General Business Law § 349;
6. Violations of New York General Business Law § 350;
7. Violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505, *et seq.*;
8. Violation of Ohio's Consumer Sales Practices Act § 1345.01, *et seq.*;
9. Violation of Ohio's Deceptive Trade Practices Ac § 4165.01, *et seq.*;
10. Violation of the Florida Deceptive & Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*;
11. Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.*;
12. Violation of the Massachusetts Consumer Protection Act, Mas. Gen. Laws ch. 93A;
13. Violations of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.01, *et seq.*;
14. Common Law Fraud;
15. Negligent Misrepresentation; and
16. Unjust Enrichment

**<u>JURY TRIAL DEMANDED</u>**

<u>ADDITIONAL COUNSEL</u>

Blake T. Hannafan*
*E-mail:* [dmm@hannafanlaw.com](mailto:dmm@hannafanlaw.com)
Hannafan & Hannafan, Ltd.
One East Wacker Drive, Suite 2800
Chicago, Illinois 60601
Telephone: (312) 527-0055
Facsimile: (312) 527-0220

CLASS ACTION COMPLAINT

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiffs Kristin Bilic, Sean Griffin, Frank Henderson, Jonathan Meyers, James Martillaro, Timothy Roberts, Elliot Rosen, Geoffrey Schlottman, and Donna Vlassich (collectively, "Plaintiffs"), bring this action against Defendant Apple, Inc. ("Defendant" or "Apple"), by and through their attorneys, individually and on behalf of all others similarly situated, and allege as follows:

**INTRODUCTION**

1.      This is a class action brought by Plaintiffs on behalf of themselves and a class of current and former owners of Apple iPhone 5, iPhone 6, iPhone 7, iPhone 7s, and older iPhone models, as well as the iPad Airs and older iPad models, and 6th generation iPod Touches, and older iPod Models ("Subject Apple Devices").[1]

2.      This class action arises from Apple's purposefully and knowingly releasing iOS operating system software updates[2] to Subject Apple Devices that slowed the performance speeds of the central processing units ("CPUs") and decreased the battery performance of these products (the "Slowdown Function").

3.      The Subject Apple Devices are among the most expensive products of their kind on the market. They directly compete with other manufacturers' smartphone, tablet, and handheld devices, most of which sell for substantially less than the Subject Apple Devices.

4.      Apple faces financial pressure to maintain revenues and boost sales for each successive version of the iPhone, iPad, and iPod, even when the features and performance of each newer model is substantially the same as the previous model.

---

[1] Plaintiffs reserve the right to amend or add to the iPhone and iPad models included in the definition of Subject Apple Devices after conducting discovery.

[2] These updates include, without limitation: iOS 10.2.1 (released on January 23, 2017); iOS 10.3 (released on March 27, 2017); iOS 10.3.1 (released on April 3, 2017); iOS 10.3.2 (released on May 15, 2017); iOS 10.3.3 (released on July 19, 2017); iOS 11.0.1 (released on September 26, 2017); iOS 11.0.2 (released on October 3, 2017); iOS 11.0.3 (released on October 11, 2017); iOS 11.1 (released on October 31, 2017); iOS 11.1.1 (released on November 9, 2017); iOS 11.1.2 (released on November 16, 2017); iOS 11.2 (released on December 2, 2017); and iOS 11.2.1 (released on December 13, 2017). *See* "Apple Security Updates," https://support.apple.com/en-us/HT201222 (last visited January 15, 2018).

CLASS ACTION COMPLAINT

5.    Because of the high cost of Subject Apple Devices and the frequency with which Apple releases new models, consumers generally do not replace their older devices with newer models unless necessary.

6.    Apple began implementing the Slowdown Function in updates beginning by at least January 2017, and possibly much earlier.

7.    Apple has publicly stated that the Slowdown Function was designed to remediate issues associated with the battery runtime when iOS updates were installed (the "Battery Issue"). Apple initially represented that the Slowdown Function was intended to remediate the Battery Issue with a limited number of devices manufactured in a very narrow timeframe during the period September-October 2015.

8.    It appears, however, that the Slowdown Function, Battery Issue or both affect a far larger set of Subject Apple Devices, which means either (a) that a far larger set of Subject Apple Devices have the Battery Issue, (b) that the Slowdown Function needlessly affects Subject Apple Devices with no real battery issues, or (c) a combination of the foregoing.

9.    Because Slowdown Function diminishes operation and battery functionality in older models (but not newer models), it has the effect of making newer models' performance more attractive to consumers.

10.    Apple failed to disclose to Plaintiffs and the Class that their Subject Apple Devices would be subject to the Slowdown Function. Instead, Apple encouraged consumers to download iOS software updates by advising them that the updates were necessary to enhance the performance of the devices, fix bugs, and improve security. For example, when advertising for Apple's security updates on its website, Apple emphasizes the necessity of the updates, stating "[k]eeping your software up to date is one of the most important things you can do to maintain your Apple's product's security."[3] Apple was embedding the Slowdown Function into these very same updates.

11.    As a result of Apple's unfair, deceptive, and/or fraudulent business practices in connection with the Slowdown Function and Battery Issue, current and former owners of Subject Apple Devices, including Plaintiffs, have suffered an ascertainable loss of money, property, and/or loss in value.

---

[3] *Id.*

CLASS ACTION COMPLAINT

12.    Had Plaintiffs and the Class known about the Slowdown Function or Battery Issue at the time of purchase, they would not have bought, or would have paid substantially less for, the Subject Apple Devices. They also would have avoided the significant out-of-pocket costs they incurred to repair or replace their Subject Apple Devices following the manifestation of the Slowdown Function or battery issues.

13.    Plaintiffs bring this action to redress Apple's violations of various states' consumer fraud statutes, and also seek recovery for Apple's fraud, negligent misrepresentation, and unjust enrichment.

## JURISDICTION & VENUE

14.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.    This Court has personal jurisdiction over Apple because it has conducted substantial business in this judicial district, intentionally and purposefully placed Subject Apple Devices into the stream of commerce within the districts of California and throughout the United States.  Apple is also incorporated in the State of California, and has its principal place of business in the State of California. Moreover, the State of California is where Apple's officers direct, control, and coordinate Apple's corporate activities; where Apple engaged in the unlawful conduct alleged in this Complaint; primarily through its Cupertino headquarters.

16.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and California Civil Code section 1780(d), because Apple transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district.

## PARTIES

**Plaintiff Bilic**

17.    Plaintiff Kristin Bilic ("Plaintiff Bilic") is a citizen of the State of Ohio, and currently resides in Avon Lake, Ohio.

18.    Plaintiff Bilic purchased an iPhone 6 Plus on December 1, 2014, exchanged it for an

iPhone 6 on December 5, 2014, routinely installed Apple's iOS updates as advised by Apple, and experienced the Slowdown Function and Battery Issue. On June 24, 2017, Plaintiff Bilic purchased an iPhone 7 Plus (which she exchanged for a replacement after experiencing battery and functionality issues).

19.    Apple failed to disclose to Plaintiff Bilic the Slowdown Function and Battery Issue to Plaintiff Bilic, both before and after her purchases and updates. Had Apple disclosed the Slowdown Function and Battery Issue to Plaintiff Bilic, she would not have purchased, or would have paid substantially less for, her Subject Apple Devices.

20.    Plaintiff Bilic has suffered an ascertainable loss as a result of the Slowdown Function, the Battery Issue, or both.

**Plaintiff Griffin**

21.    Plaintiff Sean Griffin ("Plaintiff Griffin") is a citizen of the State of Texas, and currently resides in Bronson, Texas.

22.    Plaintiff Griffin purchased an iPhone 6 in 2015, routinely installed Apple's iOS updates as advised by Apple, and experienced the Slowdown Function and Battery Issue. In late 2017, Plaintiff Griffin purchased an iPhone X.

23.    Apple failed to disclose to Plaintiff Griffin the Slowdown Function and Battery Issue to Plaintiff Griffin, both before and after his purchases and updates. Had Apple disclosed the Slowdown Function and Battery Issue to Plaintiff Griffin, he would not have purchased, or would have paid substantially less for, his Subject Apple Devices.

24.    Plaintiff Griffin has suffered an ascertainable loss as a result of the Slowdown Function, the Battery Issue, or both.

**Plaintiff Henderson**

25.    Plaintiff Frank Henderson ("Plaintiff Henderson") is a citizen of the State of California, and currently resides in Santa Barbara, California.

26.    Plaintiff Henderson purchased an iPhone 6s in late fall, 2014, routinely installed Apple's iOS updates as advised by Apple, and experienced the Slowdown Function and Battery Issue. In late 2017, Plaintiff Henderson chose to purchase an iPhone 7.

CLASS ACTION COMPLAINT

27.     Apple failed to disclose to Plaintiff Henderson the Slowdown Function and Battery Issue to Plaintiff Henderson, both before and after his purchases and updates. Had Apple disclosed the Slowdown Function and Battery Issue to Plaintiff Henderson, he would not have purchased, or would have paid substantially less for, his Subject Apple Devices.

28.     Plaintiff Henderson has suffered an ascertainable loss as a result of the Slowdown Function, the Battery Issue, or both.

**Plaintiff Martillaro**

29.     Plaintiff James Martillaro ("Plaintiff Martillaro") is a citizen of the State of Illinois, and currently resides in Wheaton, Illinois.

30.     Plaintiff Martillaro purchased an iPhone 6 for himself and for his wife in late 2014. Plaintiff Martillaro also purchased an iPad around that time. Plaintiff Martillaro routinely installed Apple's iOS updates as advised by Apple, and experienced the Slowdown Function and Battery Issue. Plaintiff Martillaro. Ultimately, both Plaintiff Martillaro and his wife purchased new iPhones to "upgrade" over their defective iPhone 6 telephones, with Plaintiff Martillaro purchasing an iPhone 7 and his wife purchasing an iPhone 8 plus.

31.     Apple failed to disclose to Plaintiff Martillaro the Slowdown Function and Battery Issue to Plaintiff Martillaro, both before and after his purchases and updates. Had Apple disclosed the Slowdown Function and Battery Issue to Plaintiff Martillaro, he would not have purchased, or would have paid substantially less for, his Subject Apple Devices.

32.     Plaintiff Martillaro has suffered an ascertainable loss as a result of the Slowdown Function, the Battery Issue, or both.

**Plaintiff Meyers**

33.     Plaintiff Jonathan Meyers ("Plaintiff Meyers") is a citizen of the Commonwealth of Massachusetts, and currently resides in Marble Head, Massachusetts.

34.     In 2016, Plaintiff Meyers purchased an iPhone 6, and routinely installed Apple's iOS updates as advised by Apple, and experienced the Slowdown Function and Battery Issue. In late 2017, Plaintiff Meyers purchased an iPhone 7.

35.     Apple failed to disclose to Plaintiff Meyers the Slowdown Function and Battery Issue to

Plaintiff Meyers, both before and after his purchases and updates. Had Apple disclosed the Slowdown Function and Battery Issue to Plaintiff Meyers, he would not have purchased, or would have paid substantially less for, his Subject Apple Devices.

36.     Plaintiff Meyers has suffered an ascertainable loss as a result of the Slowdown Function, the Battery Issue, or both.

**Plaintiff Roberts**

37.     Plaintiff Timothy Roberts ("Plaintiff Roberts") is a citizen of the State of Florida, and currently resides in Port Orange, Florida.

38.     Plaintiff Roberts purchased an iPhone 6 plus in late 2014, and routinely installed Apple's iOS updates as advised by Apple, and experienced the Slowdown Function and Battery Issue. In 2017, Plaintiff Roberts purchased an iPhone X.

39.     Apple failed to disclose to Plaintiff Roberts the Slowdown Function and Battery Issue to Plaintiff Roberts, both before and after his purchases and updates. Had Apple disclosed the Slowdown Function and Battery Issue to Plaintiff Roberts, he would not have purchased, or would have paid substantially less for, his Subject Apple Devices.

40.     Plaintiff Roberts has suffered an ascertainable loss as a result of the Slowdown Function, the Battery Issue, or both.

**Plaintiff Rosen**

41.     Plaintiff Elliot Rosen ("Plaintiff Rosen") is a citizen of the State of New York, and currently resides in Scarsdale, New York.

42.     Plaintiff Rosen purchased an iPhone 6, routinely installed Apple's iOS updates as advised by Apple, and experienced the Slowdown Function and Battery Issue. Due to these issues, Plaintiff Rosen purchased an iPhone 7.

43.     Apple failed to disclose to Plaintiff Rosen the Slowdown Function and Battery Issue to Plaintiff Rosen, both before and after his purchases and updates. Had Apple disclosed the Slowdown Function and Battery Issue to Plaintiff Rosen, he would not have purchased, or would have paid substantially less for, his Subject Apple Devices.

44.    Plaintiff Rosen has suffered an ascertainable loss as a result of the Slowdown Function, the Battery Issue, or both.

**Plaintiff Schlottman**

45.    Plaintiff Geoffrey Schlottman ("Plaintiff Schlottman") is a citizen of the State of Michigan and currently resides in Milan, Michigan.

46.    Plaintiff Schlottman purchased two 6th generation iPod Touches in January 2017. Plaintiff Schlottman routinely installed Apple's iOS updates as advised by Apple, and experienced the Slowdown Function and Battery Issue.

47.    Apple failed to disclose to Plaintiff Schlottman the Slowdown Function and Battery Issue to Plaintiff Schlottman, both before and after his purchases and updates. Had Apple disclosed the Slowdown Function and Battery Issue to Plaintiff Schlottman, he would not have purchased, or would have paid substantially less for, his Subject Apple Devices.

48.    Plaintiff Schlottman has suffered an ascertainable loss as a result of the Slowdown Function, the Battery Issue, or both.

**Plaintiff Vlassich**

49.    Plaintiff Donna Vlassich ("Plaintiff Vlassich") is a citizen of the Commonwealth of Pennsylvania, and currently resides in Pittsburgh, Pennsylvania.

50.    Plaintiff Vlassich purchased an iPhone 6 in 2014, and also purchased an iPad in 2014. Plaintiff Vlassich routinely installed Apple's iOS updates as advised by Apple, and experienced the Slowdown Function and Battery Issue. Plaintiff. On January 6, 2018, Plaintiff Vlassich purchased an iPhone 8.

51.    Apple failed to disclose to Plaintiff Vlassich the Slowdown Function and Battery Issue to Plaintiff Bilic, both before and after her purchases and updates. Had Apple disclosed the Slowdown Function and Battery Issue to Plaintiff Vlassich, she would not have purchased, or would have paid substantially less for, her Subject Apple Devices.

52.    Plaintiff Vlassich has suffered an ascertainable loss as a result of the Slowdown Function, the Battery Issue, or both.

CLASS ACTION COMPLAINT

**The Defendant**

53.    Defendant Apple, Inc. is a corporation that was created under the laws of the State of California, and has its principal place of business in Cupertino, California.

## CALIFORNIA LAW APPLIES

54.    It is appropriate to apply California law to the claims of the Class because California's interest in this litigation exceeds that of any other state.

55.    Apple conducts continuous and substantial business in California.

56.    Apple's headquarters—which houses its key executives and officers—is located in Cupertino, California.

57.    Indeed, Apple's policies and directives—including Apple's use of defective batteries and its Slowdown Function—emanate from Apple's California facility.

58.    Based on the foregoing, the policies, practices, acts, and omissions giving rise to this Action were developed in, and emanated from, Apple's headquarters in Cupertino, California. Accordingly, the State of California has the most significant relationship to this litigation and its law should govern.

## TOLLING OF STATUTES OF LIMITATIONS

59.    Any applicable statute(s) of limitations have been tolled by Apple's knowing and active concealment and denial of the facts alleged herein.  Plaintiffs and the members of the Class could not have reasonably discovered the true, latent nature of the Slowdown Function until shortly before this class action litigation was commenced.

60.    In addition, even after Plaintiffs and Class members contacted Apple and/or its authorized retailers for iPhone, iPad, and iPod repairs concerning the battery issues of the effects of the Slowdown Function, they were routinely told by Apple and/or through its retailers that the Subject Apple Devices were not defective and that a slowdown in performance and/or battery life was the result of normal use of the Subject Apple Devices.

61.    Apple was and remains under a continuing duty to disclose to Plaintiffs and the members of the Class the true character, quality, and nature of the Subject Apple Devices, that the use of defective batteries and the implementation of the Slowdown Function is based on an active decision by Apple to

avoid responsibility and, as an ancillary effect, encourage consumers to buy newer model iPhones/iPads/iPods. As a result of Apple's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## **FACTUAL ALLEGATIONS**

62. The iPhone is an internet and multimedia-enabled "smartphone" designed by Apple. Apple introduced the original iPhone for sale in the United States in or about June 2007. Since the launch of the original iPhone, Apple has released seventeen different, newer models of the iPhone, at a rate of approximately one per year.

63. The iPad is a line of table computers designed, developed, and marketed by Apple, which runs the iOS mobile operating system. The first iPad was released on April 3, 2010, and since that time, Apple has released six different, newer models of the iPad.

64. The iPod is a line of portable media players and multi-purpose pocket computers, which runs the iOS mobile operating system. The iPod was originally released on October 23, 2001, and since that time, has gone through numerous iterations, with it eventually transforming into the iPod Touch. The iPod touch was first released on September 5, 2007, and since that time, Apple has released five different, newer models of the iPod Touch.

65. Apple's iOS is a mobile operating system created and developed exclusively for hardware installed in Subject Apple Devices. Apple frequently releases iOS updates for Subject Apple Devices.

66. These updates are irreversible, once installed.

67. Subject Apple Devices suffer problems related to battery life and performance with successive iOS updates. These problems include Subject Apple Devices shutting down, even when the battery levels nowhere near depleted, and performance being slower than reasonably expected.

68. The Slowdown Function and Battery Issue has led many consumers to "upgrade" to newer versions of Subject Apple Devices.

69. In November 2016, Apple announced that "a very small number of iPhone 6s devices may

CLASS ACTION COMPLAINT

unexpectedly shut down."[4] Apple offered free replacements for the affected iPhones, but limited the iPhones available for a replacement battery to those purchased during the period September and October 2015 that fall within a certain, but unidentified serial number range.[5]

70.    Apple subsequently acknowledged that iPhones outside of its identified range of affected phones have also reported unexpected shutdowns.[6]

71.    Months later, Subject Apple Devices were still experiencing battery run-time and performance issues. Apple stated that these issues were unrelated to the battery issue associated with the devices manufactured during the period September and October 2015.[7]

72.    Apple's statements regarding the "very small number of iPhone 6s devices" with battery problems was deliberately misleading.

73.    Instead, the battery run-time and performance issues affect all Subject Apple Devices, not just the small subset originally identified by Apple.

74.    Instead of recalling all Subject Apple Devices, Apple modified the iOS so that it reduced the Subject Apple Devices' processing speeds in an effort to prevent their batteries from causing erratic operation and unexpected shutdowns.

75.    Moreover, Apple purposefully failed to disclose to consumers that a replaced battery would improve the operating performance and battery longevity of the Subject Apple Devices.

76.    Apple's conduct had the effect of making newer Subject Apple Devices more desirable than their older counterparts. Apple's conduct also saved it from having to recall and replace Subject Apple Devices or batteries within the devices.

---

[4] Apple, "iPhone 6s Program for Unexpected Shutdown issues," (November 30, 2016) (available online at https://www.apple.com/support/iphone6s-unexpectedshutdown/)
[5] Don Reisinger, "Apple will fix defective iPhone 6s Smartphone batteries for free," *Fortune* (November 21, 2016) (available online at http://fortune.com/2016/11/21/apple-iphone-battery-replacement/)
[6] Jeff John Roberts, "Why It's Time for Apple to Come Clean About the iPhone Battery," *Fortune* (December 27, 2016) (available online at http://fortune.com/2016/12/27/apple-iphone-6-battery-problem/)
[7] Liam Tung, "iPhone 6, 6s sudden shutdown? We've almost fully cured the issue with iOS 10.2.1, says Apple," *ZDNet* (February 24, 2017) (available online at http://www.zdnet.com/article/iphone-6-6s-sudden-shutdown-weve-almost-fully-cured-issue-with-ios-10-2-1-says-apple/)

77.     On December 18, 2017, Primate Labs, the company behind the Geekbench processor benchmark software, published a study of Apple's iOS software's effect on older model iPhones. The study demonstrated that the device and battery performance deteriorate following installation of Apple's iOS software updates.  Significantly, Primate Labs' founder, John Poole, stated that users expect their Subject Apple Devices to perform the same regardless of how old the battery is, but his tests indicated that wasn't the case.[8]

78.     In response to this study, Apple admitted that it modified iOS software in a manner that slowed the performance of the Subject Apple Devices:

> Our goal is to deliver the best experience for customers, which includes overall performance and prolonging the life of their devices.  Lithium-ion batteries become less capable of supplying peak current demands when in cold conditions, have a low battery charge or as they age over time, which can result in the device unexpectedly shutting down to protect its electronic components.

> Last year we released a feature for iPhone 6, iPhone 6s and iPhone SE to smooth out the instantaneous peaks only when needed to prevent the device from unexpectedly shutting down during these conditions. We've now extended that feature to iPhone 7 with iOS 11.2, and plan to add support for other products in the future.[9]

79.     Significantly, Apple did not comment on the Slowdown Feature until after Primate Labs discovered the iOS modification and its effect on Subject Apple Devices. As one news outlet described Apple's admission of its Slowdown Function, "[t]he statement from Apple came in response to a report from earlier this week from Primate Labs, the company behind the Geekbench processor benchmark software."[10]

80.     On December 28, 2017, Apple published a statement denying any nefarious motives in their implementation of the Slowdown Function and offering to reduce the price of an out-of-warranty

---

[8] John Poole, "iPhone Performance and Battery Age," *Primate Labs* (December 18, 2017) (available online at http://www.geekbench.com/blog/2017/12/iphone-performance-and-battery-age/)

[9] Samuel Gibbs, "Apple admits slowing older iPhones because of ageing batteries," *The Guardian* (Dec. 21, 2017) (available online at https://www.theguardian.com/technology/2017/dec/21/apple-admits-slowing-older-iphones-because-of-flagging-batteries).

[10] Shara Tibiken, "Apple admits slowing older iPhones, says it's to prevent battery issues," *C/Net* (December 20, 2017) (available online at https://www.cnet.com/news/apple-slows-down-older-iphone-battery-issues/)

iPhone battery replacement from $79 to $29.[11]

81.    This gesture ignores the countless consumers who have already suffered ascertainable loss as a result of the Slowdown Function and Battery Issue. It also subjects consumers to a $29 charge for a defect that is wholly Apple's responsibility. Indeed, this gesture does not make the consumer whole, but instead attempts to avoid responsibility while still making a profit on a defective product.

## CLASS ALLEGATIONS

82.    Plaintiffs bring this action on their own behalf, and on behalf of a nationwide class pursuant to Federal Rule of Civil Procedure, Rule 23(a), 23(b)(2), and/or 23(b)(3).

> **Nationwide Class:**
> All persons or entities in the United States who are current or former owners of an Apple iPhone 5, iPhone 6, iPhone 7, iPhone 7s, and older iPhone models, as well as the iPad Airs and older iPad models, and 6th generation iPod touches, and older iPod Models ("Subject Apple Devices").

83.    In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure, Rule 23(c)(5), Plaintiffs seek to represent the following state classes only in the event that the Court declines to certify the Nationwide Class above.  Specifically, the State Classes consist of each of the following:

> **California Class:**
> All persons or entities in California who are current or former owners who are current or former owners of a Subject Apple Device, as defined by California Civil Code § 1791(a).

> **Florida Class:**
> All persons or entities in Florida who are current or former owners of a Subject Apple Devices.

> **Illinois Class:**
> All persons or entities in Illinois who are current or former owners of a Subject Apple Device.

> **Massachusetts Class:**
> All persons or entities in Massachusetts who are current or former owners of a Subject Apple Device.

---

[11] Apple, "A Message to Our Customers about iPhone Batteries and Performance," (December 28, 2017) (available online at https://www.apple.com/iphone-battery-and-performance/)

-14-

CLASS ACTION COMPLAINT

**Michigan Class:**
All persons or entities in Michigan who are current or former owners of a Subject Apple Device.

**New York Class:**
All persons or entities in New York who are current or former owners of a Subject Apple Device.

**Ohio Class:**
All persons or entities in Ohio who are current or former owners of a Subject Apple Device.

**Pennsylvania Class:**
All persons or entities in Pennsylvania who are current or former owners of a Subject Apple Device.

**Texas Class:**
All persons or entities in Texas who are current or former owners of a Subject Apple Device.

84.   The California Class, Florida Class, Illinois Class, Massachusetts Class, Michigan Class, New York Class, Ohio Class, Pennsylvania Class, and Texas Class shall be collectively referred to herein as the "State Classes."

85.   The Nationwide Class and other State Classes shall be collectively referred to herein as the "Class."  Excluded from the Class is Apple, its affiliates, employees, officers and directors, and the Judge(s) assigned to this case.  Plaintiffs reserve the right to modify, change, or expand the various class definitions set forth above based on discovery and further investigation.

86.   <u>Numerosity</u>:  Upon information and belief, the Class is so numerous that joinder of all members is impracticable.  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Apple and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that hundreds of thousands to millions of Subject Apple Devices have been sold in each of the States that are the subject of the Class.

87.   <u>Existence and Predominance of Common Questions of Fact and Law:</u> Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions

affecting individual Class members.   These common legal and factual questions include, without limitation:

a. Whether the Subject Apple Devices were sold with a defective batteries;

b. Whether Apple implemented the Slowdown Function in an effort to avoid the costs and efforts involved with recalling and replacing the batteries in the Subject Apple Devices;

c. Whether Apple implemented its Slowdown Function to encourage consumers to purchase newer versions of the devices;

d. Whether Apple's representations about the nature and scope of the battery run-time in the Subject Apple Devices were false;

e. Whether Apple made false representations about the nature and scope of the battery life and performance of the Subject Apple Devices; and

f. Whether Apple failed to disclose to consumers the effect of implanting iOS updates, including the Slowdown Function, on their Subject Apple Devices; and

88.   Typicality:  Plaintiffs' claims are typical of the claims of the Class. Each Plaintiff purchased a Subject Apple Devices that was affected by the Battery Issue and the Slowdown Function, as did each member of the Class.  Furthermore, Plaintiffs and the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Apple's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

89.   Adequacy:  Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class, they have retained counsel competent and highly experienced in complex class action litigation, including consumer litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

90.   Superiority:  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Apple's conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation

increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Apple's sales records, its Apple ID procedure that is needed to function every iPhone/iPad/iPod, and database of complaints.

91. Apple has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

### FIRST CAUSE OF ACTION
**VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA") Cal. Civ. Code § 1750, *et seq*.**
**(By All Plaintiffs on Behalf of the Nationwide Class or, Alternatively, by Plaintiff Henderson on Behalf of the California Class)**

92. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

93. Plaintiffs bring this claim on behalf of themselves and all members of the Nationwide Class or, alternatively, Plaintiff Henderson brings this claim on behalf of the California Class against Apple.

94. Apple is a "person" as that term is defined in California Civil Code section 1761(c).

95. Plaintiffs and the Class are "consumers" as that term is defined in California Civil Code section 1761(d).

96. Apple engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members that the Subject Apple Devices were installed with defective batteries and later exposed to Apple's Slowdown Function. These acts and practices violate, at a minimum, the following sections of the CLRA:

    (a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;

    (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9) Advertising goods and services with the intent not to sell them as advertised.

97.     Apple's unfair or deceptive acts or practices occurred repeatedly in Apple's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

98.     Apple knew that the Subject Apple Devices would fail prematurely due to the Battery Issue and Slowdown Function and were not suitable for their intended use.

99.     Apple was under a duty to Plaintiffs and the Class to disclose the defective nature of the Subject Apple Devices, the Battery Issue and the Slowdown Function because:

a.  Apple was in a superior position to know the true state of facts about the defect and associated repair costs in the Subject Apple Devices due to the defective batteries and once exposed to the Slowdown Function;

b.  Plaintiffs and the Class members could not reasonably have been expected to learn or discover that the Subject Apple Devices would fail prematurely due to defective batteries and being exposed to Apple's Slowdown Function until manifestation of the Slowdown Function's effects;

c.  Apple knew that Plaintiffs and the Class members could not reasonably have been expected to learn or discover the Slowdown Function's effects on the performance of the Subject Apple Devices and the associated repair costs necessitated thereby until manifestation of the defective batteries and the Slowdown Function's effects;

d.  Apple actively concealed its defective batteries and subsequent Slowdown Function—and its effects on the Subject Apple Devices—and the associated repair costs by claiming that any degradation of performance was due to the normal use of the Subject Apple Devices, all while knowing that any iOS update would ultimately be futile, as the defective batteries and the Slowdown Function would degrade the performance of the Subject Apple Devices.

100.     In failing to disclose the defective batteries and the Slowdown Function and the associated repair costs that result from it, Apple have knowingly and intentionally concealed material facts and breached its duty not to do so.

101.     The facts concealed or not disclosed by Apple to Plaintiffs and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Apple's Subject Apple Devices or pay a lesser price.  Had Plaintiffs and the Class known about the defective nature of the Subject Apple Devices, they would not have purchased the Subject

Apple Devices, would have paid less for them or would have avoided the extensive repair costs associated therewith.

102. Under California Civil Code section 1780(a), Plaintiffs and members of the Class seek injunctive and equitable relief for Apple's violations of the CLRA.

103. On January 19, 2018, Plaintiffs' counsel sent a letter to Apple by certified mail, return receipt requested, that contained notice of Apple's violations of the CLRA and a demand for relief. Apple has not remedied its CLRA violations.

104. Plaintiffs and Class members have suffered damages, including losing money or property, as a direct and proximate result of Apple's CLRA violations.  Had Plaintiffs and the Class known about the defective nature of the Subject Apple Devices, they would not have purchased the Subject Apple Devices, would have paid less for them or would have avoided the extensive repair costs and need to purchase newer models to achieve the same performance originally promised associated therewith.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE**
**CAL. BUS. & PROF. CODE § 17200**
**(By All Plaintiffs on Behalf of the Nationwide Class or, Alternatively, by Plaintiff Henderson on Behalf of the California Class)**

105. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

106. Plaintiffs bring this claim on behalf of themselves and all members of the Nationwide Class or, alternatively, Plaintiff Henderson brings this claim on behalf of the California Class against all Apple.

107. The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

108. Apple has engaged in unfair competition and unfair, unlawful and/or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and the Class members that the Subject Apple Devices lose substantial performance ability because of the defective batteries and once exposed to the Slowdown Function (and

the costs and diminished value of the Subject Apple Devices as a result of this problem).  Apple should have disclosed this information because they were in a superior position to know the true facts related to the defective batteries, the Slowdown Function and its effects on the Subject Apple Devices, and Plaintiffs and Class members could not reasonably be expected to learn or discover the true facts.

109.    These acts and practices are fraudulent because they have deceived Plaintiffs and are likely to deceive the public.  In failing to disclose the defective batteries and its Slowdown Function, and suppressing other material facts from Plaintiffs and the Class members, Apple breached its duty to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and the Class members.  The omissions and acts of concealment by Apple pertained to information that was material to Plaintiffs and Class members, as it would have been to all reasonable consumers.

110.    The injuries suffered by Plaintiffs and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Class members should have reasonably avoided.  Therefore Apple also has engaged in unfair practices.

111.    Defendants' acts and practices also are unlawful because they violate California Civil Code sections 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code section 2313.

<u>**THIRD CAUSE OF ACTION**</u>
**THE SONG-BEVERLY ACT – BREACH OF IMPLIED WARRANTY VIOLATIONS**
**California Civil Code §§ 1792, 1791.1, *et seq.***
**(By Plaintiffs Henderson on Behalf of the California Class)**

112.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

113.    Plaintiff Henderson brings this claim on behalf of the California Class against Apple.

114.    At all relevant times hereto, Apple was the manufacturers, distributors, warrantors, and/or sellers of the Subject Apple Devices.  Apple knew or should have known of the specific use for which the Subject Apple Devices were purchased.

115.    Apple provided Plaintiffs and the Class members with an implied warranty that the Subject Apple Devices, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold.

-20-

116.    Apple impliedly warranted that the Subject Apple Devices were of merchantable quality and fit for such use.  This implied warranty included, *inter alia*, the following: (i) a warranty that the Subject Apple Devices were manufactured, supplied, distributed, and/or sold by Apple were reliable and would not experience premature performance failure due to a design defect and/or the implementation of any policy to purposefully decrease the performance capabilities of the Subject Apple Devices; and (ii) a warranty that the Subject Apple Devices would be fit for their intended use—providing high smartphone/tablet performance—while the Subject Apple Devices were being operated.

117.    Contrary to the applicable implied warranties, however, the Subject Apple Devices are not fit for their ordinary purpose of providing reliable and high quality smartphone/tablet performance due to the defective batteries and the implementation of the Slowdown Function.

118.    Apple breached implied warranties applicable to Subject Apple Devices at the time of sale because the Subject Apple Devices were designed with a defective battery, which necessitated Apple's Slowdown Function, at the time Plaintiffs and Class members purchased their Subject Apple Devices.

119.    Apple's actions, as complained of herein, breached the implied warranty that the Subject Apple Devices were of merchantable quality and fit for such use, in violation of California Civil Code sections 1792 and 1791.1.

## FOURTH CAUSE OF ACTION
### VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT
### MICH. COMP. LAWS § 445.903 *et seq*.
### (By Plaintiff Schlottman on Behalf of the Michigan Class)

120.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

121.    The Michigan Consumer Protection Act prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer"; "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer"; "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is"; or "[f]ailing to reveal

facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

122.    Plaintiff Schlottman and the Michigan Class are "person[s]" within the meaning of Mich. Comp. Laws § 445.902(1)(d).

123.    Apple is a "person" engaged in "trade or commerce" within the meaning of Mich. Comp. Laws § 445.902(1)(d) and (g).

124.    Apple engaged in deceptive practices by concealing from consumers the defective batteries, its Slowdown Function, and the true quality and performance of the Subject Apple Devices.

125.    Apple engaged in practices that are contrary to public policy by implementing a policy specifically designed to decrease the performance of already-purchased smartphones/tablets, thereby decreasing their value and their capabilities.

126.    As a direct and proximate result of Apple's deceptive, fraudulent, and unfair practices, Plaintiff Schlottman and the Michigan Class have suffered injury in fact and/or actual damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF NEW YORK GBL § 349**
**(By Plaintiff Rosen on Behalf of the New York Class)**

127.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

128.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state …"

129.    The conduct of Apple alleged herein constitutes "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff Rosen and the New York Class seek monetary damages and the entry of preliminary and permanent injunctive relief against Apple, enjoining it from engaging in any practice similar to its Slowdown Function again.

130.    There is no adequate remedy at law.

131.    Apple misleadingly, inaccurately, and deceptively presented its Subject Apple Devices to consumers.

132.    Apple's improper consumer-oriented conduct—including selling the Subject Apple Devices with defective batteries at a premium and then subsequently installing software to make the Subject Apple Devices' performances substandard—is misleading in material way in that it, *inter alia*, induced Plaintiff Rosen and the New York Class to purchase and pay a premium for Subject Apple Devices and to use the Subject Apple Devices when they otherwise would not have, or would have paid substantially less for. Apple made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

133.    Plaintiff Rosen and the New York Class have been injured inasmuch as the Subject Apple Devices lost substantial performance ability due to the defective batteries and once exposed to the Slowdown Function, they paid a premium for products that are—contrary to Apple's representations—not reliable or high-performance, and they incurred substantial monetary loss in attempting to repair or replace the Subject Apple Devices after the defective batteries began to fail and the Slowdown Function went into effect.

134.    Apple's advertising and the Subject Apple Devices packaging and labeling induced Plaintiff Rosen and the New York Class to buy Apple's Subject Apple Devices and to pay a premium price for them.

135.    Apple's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law § 349(a) and Plaintiff and the New York Class have been damaged thereby.

136.    As a result of Apple's "unlawful" deceptive acts and practices, Plaintiff Rosen and the New York Class are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution, disgorgement of all moneys obtained by means of Apple's unlawful conduct, interest, and attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF NEW YORK GBL § 350**
**(By Plaintiff Rosen on Behalf of the New York Class)**

137.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

138.    New York General Business Law § 350 provides, in part, as follows:

"False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

139.    New York General Business Law § 350a(1) provides, in part, as follows

The term 'false advertising, including labeling, of a commodity, or the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual …"

140.    Apple's labeling and advertisements contain untrue and materially misleading statements concerning the performance capabilities and longevity of the Subject Apple Devices.

141.    Plaintiff Rosen and the New York Class have been injured inasmuch as the Subject Apple Devices lost substantial performance ability because of the defective batteries and once exposed to the Slowdown Function, they paid a premium for products that are—contrary to Apple's representations—not reliable or high-performance, and they incurred substantial monetary loss in attempting to repair or replace the Subject Apple Devices after the Slowdown Function went into effect

142.    Apple's advertising, packaging, and products' labeling induced Plaintiff Rosen and the New York Class to buy Subject Apple Devices.

143.    Apple made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

144.    Apple's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

145.    Apple made the material misrepresentations described in this Complaint in Apple's advertising, and on the Subject Apple Devices packaging and labeling.

146.    Apple's material misrepresentations were substantially uniform in content, presentations, and impact upon consumers at large.  Moreover, all consumers purchasing the Subject Apple Devices were exposed to Apple's material misrepresentations.

147.    As a result of Apple's "unlawful" deceptive acts and practices, Plaintiff Rosen and the New York Class are entitled to monetary, compensatory, treble and punitive damages, injunctive relief,

restitution, disgorgement of all moneys obtained by means of Apple's unlawful conduct, interest, and attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 Ill. Comp. Stat. 505, *et seq***
**(By Plaintiff Martillaro on behalf of the Illinois Class)**

148.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

149.    The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505, et seq., prohibits unfair methods of competition and unfair or deceptive acts or practices.

150.    Plaintiff James Martillaro is a "person" and a "consumer" as defined in ICFA, 815 ILCS 505/(c) and (e), respectively.

151.    Apple was and is engaged in commerce in the State of Illinois in connection with Plaintiff Martillaro and the other members of the Illinois Class.

152.    Apple's conduct described above that purposefully harmed the Subject Apple Devices was unfair and deceptive.

153.    Apple unilaterally took these harmful actions without warning or notice to Plaintiff Martillaro and other members of the Illinois Class.

154.    Apple made misleading and deceptive representations and advertisements to consumers such as Plaintiff Martillaro and other members of the Illinois Class concerning the true nature of the battery performance in the Subject Apple Devices, as well as the Slowdown Function.

155.    Apple also omitted the true nature of its actions when providing the iOS updates that was a part of Apple's Slowdown Function.

156.    Apple's omissions were material and deceptive because reasonable consumers did not expect their Subject Apple Devices to be equipped with a defective battery, nor did they expect that the speed and performance of their Subject Apple Devices would be harmed by the Slowdown Function.

157.    Apple's conduct was also unfair, immoral, unethical, oppressive, and unscrupulous, and substantially injured Plaintiff Martillaro and the other members of the Illinois Class.

158.    Plaintiff Martillaro and the other members of the Illinois Class suffered damage as a result

of Apple's deceptive and unfair conduct. Their Subject Apple Devices battery and performance issues were exacerbated by the implementation of Slowdown Function. Consequently, Plaintiff Martillaro and the Illinois Class have been deprived of the benefit of their bargain and are left with substandard Apple products that perform worse than they should.

## EIGHTH CAUSE OF ACTION
### VIOLATIONS OF OHIO'S CONSUMER SALES PRACTICES ACT §1345.01 *et seq.*
### (By Plaintiff Bilic on behalf of the Ohio Class)

159.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

160.    This cause of action is brought pursuant to Ohio's Consumer Sales Practices act, Ohio Revised Code §1345, et seq. (the "CSPA")

161.    Plaintiff is a consumer as defined by Ohio Revised Code §1345.01(D).

162.    Apple is a supplier as defined by Ohio Revised Code §1345.01(C).

163.    Apple's conduct described herein involves consumer transactions as defined in Ohio Revised Code §1345.01(A).

164.    Apple violated the CSPA by engaging in the following subsections of Ohio Revised Code §1345.02 in consumer transactions with Plaintiff Bilic and the Ohio Class, which were intended to result in, and did result in, the sale of the Subject Apple Devices:

> (A) By "commit[ting] an unfair or deceptive act or practice in connection with a consumer transaction;"

> (B) (1) by representing that the Subject Apple Devices have "performance characteristics … uses, or benefits that [they] do[] not have;"

> (B)(2) by representing that the Subject Apple Devices are "of a particular standard, quality, grade, style [or] prescription" when they are not; and

> (B)(5) by representing that the products are being "supplied in accordance with a previous representation," when they are not.

165.    Pursuant to Ohio Adm. Cod 109:4-3-10(A) (Substantiations of Claims in Advertising), it shall be a deceptive act or practice in connection with a consumer transaction for a supplier to:

> Make any representations, claims, or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims, or assertions are made, the supplier possesses or relies upon a reasonable

basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims, or assertions of fact….

166.    In conjunction with the violations of Ohio Revised Code §1345.02 set forth above, Apple violated Ohio Adm. Code §109:4-3-10 because it cannot and has not substantiated the advertising claims made in connection with the promotion of the Subject Apple Devices.

167.    Apple further violated the CSPA by engaging in the following practices proscribed by the following subsections of Ohio Revised Code §1345.03 in consumer transactions with Plaintiff Bilic and the Ohio Class, which were intended to result in, and did result in, the sale of the Subject Apple Devices:

(A) Apple engaged in and are engaging in an "unconscionable act or practice in connection with a consumer transaction;"

(B)(3) Apple "knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction;" and

(B)(6) Apple "knowingly made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment."

168.    Apple violated the CSPA and Ohio Administrative Code through its advertisements for the Subject Apple Devices as described above when it knew or should have known that the representations and advertisements were unsubstantiated, false, and misleading.

169.    Pursuant to Ohio Revised Code §1345.09(A), Plaintiff Bilic and the Ohio Class are entitled to rescind the consumer transaction or recover damages or other appropriate relief under Rule 23 of the Federal Rules of Civil Procedure.

170.    Pursuant to Ohio Revised Code §1345.09(D), Plaintiff Bilic and the Ohio Class seek an order enjoining the above-described wrongful acts and practices of Apple and for restitution and disgorgement.

171.    Pursuant to Ohio Revised Code §1345.09(E), this Complaint will be served upon the Ohio Attorney General.

//

//

//

**NINTH CAUSE OF ACTION**
**VIOLATIONS OF OHIO'S DECEPTIVE TRADE PRACTICES ACT §4165.01** *et seq.*
**(By Plaintiff Bilic on behalf of the Ohio Class)**

172.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

173.    Apple is a person as defined in Ohio Revised Code §4165.01(D).

174.    For the reasons discussed above, Apple has engaged in unfair, deceptive, untrue and misleading advertising in violation of the following subsections of Ohio's Deceptive Trade Practices Act §4165.02 because Apple:

(A)(4) "Uses [and has used in the past] deceptive representations … in connection with goods";

(A)(7) "Represents that goods … have sponsorship, approval, characteristics, ingredients, uses [or] benefits … that they do not have …'"

(A)(9) "Represents that goods … are of a particular standard, quality, or grade" and "they are of another"; and

(A)(11) "Advertises goods … with intent not to sell them as advertised."

175.    Apple's conduct caused substantial injury to Plaintiff Bilic and the Ohio Class.  Plaintiff Bilic has suffered injury in fact and has lost money as a result of Apple's deceptive conduct.

176.    Plaintiff Bilic and the Ohio Class seek equitable relief and to enjoin Apple on the terms that the Court considers reasonable.

**TENTH CAUSE OF ACTION**
**VIOLATIONS OF THE FLORIDA DECEPTIVE & UNFAIR TRADE PRACTICES ACT**
**Fla. Stat. § 501.201,** *et seq.*
**(By Plaintiff Roberts on behalf of the Florida Class)**

177.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

178.    Plaintiff Roberts brings this claim on behalf of himself and the Florida Class against Apple.

179.    Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).

180.    The actions of Apple, as set forth above, occurred in the conduct of trade or commerce.

181.    In the course of Apple's business, it willfully failed to disclose and actively concealed the Defect in the Subject Apple Devices, as well as the Slowdown Function, as described above. Accordingly, Apple engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in Florida Statute section 501.204(1), including representing that the Subject Apple Devices have characteristics, uses, benefits, and qualities which they do not have; advertising the Subject Apple Devices with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

182.    Apple should have disclosed this information because it was in a superior position to know the true facts related to the Defect and the Slowdown Function, and Plaintiff Roberts and the Florida Class could not reasonably be expected to learn or discover the true facts related to this Defect or the Slowdown Function.  Apple, by the conduct, statements, and omissions described above, also knowingly and intentionally concealed from Plaintiff Roberts and the Florida Class that Subject Apple Devices suffer from the Defect (and the costs and diminished value of the Apple products associated therewith).

183.    These acts and practices have deceived Plaintiff Roberts and are likely to deceive the public.  Apple, by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff Roberts and the Florida Class that the Subject Apple Devices suffer from the Defect and Slowdown Function (and the costs and diminished value of the Apple products associated therewith), breached their duties to disclose these facts, violated the FDUTPA, and caused injuries to Plaintiff Roberts and the Florida Class.  The omissions and acts of concealment by Apple pertained to information that was material to Plaintiff Roberts and the Florida Class, as it would have been to all reasonable consumers.

184.    The injuries suffered by Plaintiff Roberts and the Florida Class are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff Roberts and the Florida Class should have reasonably avoided.

185.    Apple's conduct proximately caused injuries to Plaintiff Roberts and the Florida Class. Had Plaintiff Roberts and the Florida Class known about the defective nature of the Subject Apple

Devices or the Slowdown Function, they would not have purchased the Subject Apple Devices, would have paid less for them, or would have avoided the extensive repair costs associated therewith.

## ELEVENTH CAUSE OF ACTION
### VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### 73 Pa. Stat. § 201-1, *et seq.*
### (By Plaintiff Vlassich on behalf of the Pennsylvania Class)

186.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

187.    Plaintiff Vlassich brings this claim on behalf of herself and the Pennsylvania Class against Apple.

188.    Plaintiff is a natural person who purchased Subject Apple Devices for personal, family or household purposes.

189.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" as set forth in the statute. 73 Pa. Stat. § 201-3.

190.    Apple engaged in unfair and deceptive acts in the conduct of trade or commerce in violation of the PUTPCPL by the practices described above, and by knowingly and intentionally concealing from Plaintiff Vlassich and the Pennsylvania Class that the Subject Apple Devices suffer from a design defect (and the costs, risks, and diminished value of the Apple products as a result of this problem). These acts and practices violate, at a minimum, the following sections of PUTPCPL section 201-2:

> (4)(ii) Misrepresenting the source, sponsorship, approval or certification of goods or services;

> (4)(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

> (4)(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

> (4)(ix) Advertising goods and services with intent not to sell them as advertised; and

> (4)(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

191.    Apple knew that their Subject Apple Devices were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use, and that the Slowdown Function would degrade the performance levels of the Subject Apple Devices.

192.    Apple was under a duty to Plaintiff Vlassich and the Pennsylvania Class to disclose the defective nature of the Subject Apple Devices, the Defect, and the Slowdown Function because:

a.    Apple was in a superior position to know the true state of facts about the defect and associated repair costs in the Subject Apple Devices;

b.    Plaintiff Vlassich and the Pennsylvania Class could not reasonably have been expected to learn or discover that the Subject Apple Devices had a Defect, or the implementation of the Slowdown Function until manifestation of the Defect or the Slowdown Function's results;

c.    Apple knew that Plaintiff Vlassich and the Pennsylvania Class could not reasonably have been expected to learn or discover the Defect, the Slowdown Function, and the associated repair costs necessitated thereby until the manifestation of the Defect and the Slowdown Function; and

d.    Apple actively concealed the Defect, the Slowdown Function, and the associated repair costs by claiming the Defect does not exist and, that any performance and batteries issues were the result of normal "wear and tear."

193.    In failing to disclose the Defect, the Slowdown Function, and the associated repair costs that result from it, Apple knowingly and intentionally concealed material facts and breached their duty not to do so.

194.    The facts concealed or not disclosed by Apple to Plaintiff Vlassich and the Pennsylvania Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Subject Apple Devices or pay a lesser price.  Had Plaintiff Vlassich and the Pennsylvania Class known about the defective nature of the Subject Apple Devices, they would not have purchased the Subject Apple Devices, would have paid less for them or would have avoided the extensive repair costs associated therewith.

195.    Pursuant to 73 Pennsylvania Statutes section 201-9.2, Plaintiffs request that the Court grant treble damages.

//

//

//

**TWELFTH CAUSE OF ACTION**
**VIOLATIONS OF MASSACHUSETTS' CONSUMER PROTECTION ACT,**
**Mass. Gen. Laws ch. 93A**
**(By Plaintiff Meyers on behalf of the Massachusetts Class)**

196.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

197.    Plaintiff Meyers bring this claim on behalf of himself and the Massachusetts Class against Apple.

198.    Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A makes it unlawful to engage in any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.  Unfair acts or practices include practices that are within at least the penumbra of some common-law, statutory, or other established concept of unfairness; immoral, unethical, oppressive, or unscrupulous acts; or acts that cause substantial injury.  Deceptive acts or practices include those that would reasonably cause a person to act differently from the way he or she would otherwise have acted.

199.    As alleged throughout the Complaint, Apple engaged in unfair, deceptive, and/or unlawful practices in violation of Mass. Gen. Laws ch. 93A including but not limited to: (A) knowingly selling the Subject Apple Devices with the Defect, but failing to disclose the Defect; (B) implementing its Slowdown Function on the Subject Apple Devices; and (C) making material misrepresentations regarding the quality of the Subject Apple Devices.

200.    Apple's conduct offends public policy and is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers.  Additionally, Apple's conduct was deceptive because it causes Plaintiff Meyers and the Massachusetts Class to act differently from the way they would have otherwise acted.

201.    Apple's unfair and/or deceptive acts or practices in violation of Mass. Gen. Laws Ch. 93A, § 2, proximately caused Plaintiffs and the Massachusetts Class to purchase the Subject Apple Devices, whereas otherwise they would not have purchased the Subject Apple Devices, would have paid less for them or would have avoided the extensive repair costs associated therewith.  The losses and adverse consequences that Plaintiff Meyers and the Massachusetts Class suffered by purchasing the Subject

Apple Devices were foreseeable results of Apple's unfair, deceptive, and/or unlawful advertising and marketing.

**THIRTEENTH CAUSE OF ACTION**
**VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**
**Tex. Bus. & Com. Code § 17.01, *et seq*.**
**(By Plaintiff Griffin on behalf of the Texas Class)**

202.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

203.    Plaintiff Griffin bring this claim on behalf of himself and the Texas Class against Apple.

204.    The Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. § 17.01, *et seq*. ("DTPA") declares unlawful any false, misleading, or deceptive acts or practices in the conduct of any trade or commerce.

205.    The actions of Apple, as set forth above, occurred in the conduct of trade or commerce.

206.    In the course of Apple's business, it willfully failed to disclose and actively concealed the Defect, and its subsequent Slowdown Function, in the Subject Apple Devices as described above. Accordingly, Apple engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in the DTPA, including representing that Subject Apple Devices have characteristics, uses, benefits, and qualities which they do not have; advertising Subject Apple Devices with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

207.    Apple should have disclosed this information because it was in a superior position to know the true facts related to the Defect, and Plaintiff Griffin and the Texas Class could not reasonably be expected to learn or discover the true facts related to this Defect or the Slowdown Function.  Apple, by the conduct, statements, and omissions described above, also knowingly and intentionally concealed from Plaintiff Griffin and the Texas Class that Subject Apple Devices suffer from the Defect and subsequent Slowdown Function (and the costs and diminished value of the Apple products as a result of this problem).

208.    These acts and practices have deceived Plaintiff Griffin and are likely to deceive the public.  In failing to disclose the design defect and suppressing other material facts from Plaintiff Griffin

-33-

and the Texas Class, Apple breached its duties to disclose these facts, violated the DTPA, and caused injuries to Plaintiff Griffin and the Texas Class.  The omissions and acts of concealment by Apple pertained to information that was material to Plaintiff Griffin and the Texas Class, as it would have been to all reasonable consumers.

209.    The injuries suffered by Plaintiff Griffin and the Texas Class are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff Griffin and the Texas Class should have reasonably avoided.

210.    A causal relationship exists between Apple's unlawful conduct and the ascertainable losses suffered by Plaintiff Griffin and the Texas Class.  Had Plaintiff Griffin and the Texas Class known about the defective nature of the Subject Apple Devices or the Slowdown Function, they would not have purchased the Subject Apple Devices, would have paid less for them or would have avoided the extensive repair costs associated therewith.

211.    Plaintiffs have complied with the DTPA's notice requirements by providing written notice to Apple of the claims alleged herein via certified mail.

## FOURTEENTH CAUSE OF ACTION
### COMMON LAW FRAUD
### (On behalf of the Nationwide Class)

212.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

213.    Apple made material misstatements of fact to Plaintiffs and the Class regarding the non-defective nature of the Subject Apple Devices, the performance capacity and longevity of the Subject Apple Devices.

214.    These misstatements were made by Apple were made with knowledge of their falsity, and with the intent that Plaintiffs and the Class would rely upon them.

215.    As described herein, Apple fraudulently sold Subject Apple Devices with defective batteries, and then sent out software "updates" to effectively decrease the performance capabilities of the Subject Apple Devices well below the performance capacity advertised.

216.    At the time Apple made these misrepresentations and concealments, and at the time Plaintiffs and the Class purchased the Subject Apple Devices, Plaintiffs and the Class were unaware of

the falsity of these misrepresentations, and reasonably believed Apple's contentions over the Subject Apple Devices high performance capabilities to be true.

217.    In making these misrepresentations and concealments, Apple knew they were false and that the Subject Apple Devices were designed with defective batteries, and intended that the Plaintiffs and the Class would rely upon such misrepresentations.

218.    Plaintiffs and the Class did, in fact, rely upon Apple's misrepresentations and omissions concerning the performance capabilities of the Subject Apple Devices, and their longevity as a high-performance smartphone/tablet/handheld computer.

219.    As a direct and proximate result of Apple's deceptive, fraudulent, and unfair practices, Plaintiffs and the Class have suffered injury in fact and/or actual damages in an amount to be determined at trial.

220.    Plaintiffs, on behalf of themselves and all others similarly situated, demands judgment against Apple for damages and declaratory relief.

## FIFTEENTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION
### (On behalf of the Nationwide Class)

221.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

222.    Under the circumstances alleged, Apple owed a duty to Plaintiffs and the Class to provide them with high-performance smartphone/tablet/handheld computer with a non-defective battery that would not lose their capabilities or their longevity once a newer model iPhone was released.

223.    Apple misrepresented to Plaintiffs and the Class that by purchasing a Subject Apple Devices, they would be enjoying a high-performance smartphone/tablet/handheld computer that would retain its capabilities over the course of ownership, and that any subsequent "updates" provided by Apple would improve the performance of the Subject Apple Devices, rather than sabotage them. This is not what Plaintiffs or the Class actually received. Apple failed to inform consumers of the Subject Apple Devices' defective batteries, or the effect iOS software updates would have on the performance of the Subject Apple Devices.

224.    Apple's misrepresentations and omissions, as described herein, were false, negligent, and material.

225.    Apple negligently made these misrepresentations and omissions with the understanding that Plaintiffs and the Class would rely upon them.

226.    Plaintiffs and the Class did, in fact, reasonably rely upon these misrepresentations and omissions made by Apple.

227.    As a direct and proximate result of Apple's negligent actions, Plaintiffs and the Class have suffered injury in fact and/or actual damages in an amount to be determined at trial.

228.    Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Apple for damages and declaratory relief.

**SIXTEENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On behalf of the Nationwide Class)**

229.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

230.    Plaintiffs bring this cause of action on behalf of themselves and a class of similarly situated persons against Apple.

231.    Plaintiff and the Class conferred a benefit on Apple by purchasing the Subject Apple Devices.

232.    Apple had knowledge that this benefit was conferred upon it.

233.    Apple has been unjustly enriched at the expense of Plaintiffs and the Class, and its retention of this benefit under the circumstances would be inequitable.

234.    Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Apple for damages and declaratory relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully requests that this Court:

A.  determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as

defined above;

B.  appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

C.  award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiffs and the Class members are entitled;

D.  award pre-judgment and post-judgment interest on such monetary relief;

E.  grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Apple to repair, recall, and/or replace the Subject Apple Devices;

F.  award reasonable attorneys' fees and costs; and

G.  grant such further relief that this Court deems appropriate.

Dated: January 19, 2018                     Respectfully submitted,

By:___/s/ Mark A. Chavez_____
                    Mark A. Chavez
                    Attorneys for Plaintiffs and Putative Classes

Mark A. Chavez
E-Mail:  mark@chavezgertler.com
Chavez & Gertler LLP
42 Miller Ave.
Mill Valley, California 94941
Telephone:  (415) 381-5599

Bryan L. Clobes
CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
1101 Market St., Suite 2650
Philadelphia, Pennsylvania 19107
Telephone:  (215) 864-2800
E-Mail:  bclobes@caffertyclobes.com

Anthony F. Fata
Christopher P.T. Tourek
CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
150 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone:  (312) 782-4880
E-mail: afata@caffertyclobes.com
                ctourek@caffertyclobes.com

Blake T. Hannafan
E-mail:  dmm@hannafanlaw.com
Hannafan & Hannafan, Ltd.
One East Wacker Drive, Suite 2800
Chicago, Illinois 60601
Telephone:  (312) 527-0055

-37-

1

**JURY DEMAND**

Plaintiffs, on behalf of themselves and the putative Class, demand a trial by jury on all issues so triable.

By:_____*/s/ Mark A. Chavez*_____
Mark A. Chavez
Attorneys for Plaintiffs and Putative Classes

-38-